UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALVIN GREER,

                Petitioner,                              Hon. Janet T. Neff

v.                                             Case No. 1:09-CV-34

SHIRLEE HARRY,

                Respondent.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Greer's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Greer's petition be **denied**.


## BACKGROUND

        As a result of events that occurred on December 18, 2003, Petitioner was charged with armed robbery.  (Trial Transcript, November 1, 2004, 11).  Several individuals testified at Petitioner's jury trial.  The relevant portions of their testimony are summarized below.

1

**Jewel Bazan**

On December 18, 2003, at approximately 1:00 p.m., Bazan entered Morgan's Appliance Store in Allegan, Michigan. (Trial Transcript, November 1, 2004, 64). She remained in the store for approximately 15 minutes. (Tr. 64-65). While Bazan was walking to her car, she passed a "fair complected black male" who she did not recognize. (Tr. 65-66). The man was wearing glasses and a hooded jacket. (Tr. 66). Bazan later learned that Morgan's was robbed at approximately 1:15 p.m. (Tr. 65).

**Ashley Haas**

As of December 18, 2003, Haas was employed at Morgan's Appliance Store in Allegan, Michigan. (Trial Transcript, November 1, 2004, 70). That afternoon, Haas was the only employee in the store. (Tr. 71-72). At "about 1:00," a man entered the store and asked Haas if her boss was present. (Tr. 72). Haas did not know the man, but recognized that he had been in the store 1-2 weeks previously attempting to return two refrigerator filters that had been purchased elsewhere. (Tr. 72, 84-85).

The man, who was wearing gloves and carrying a bag, pulled a knife out of his pocket and pointed it at Haas. (Tr. 73-77, 86-87). The man told Haas to "put the money in the bag." (Tr. 77). Haas removed all the cash from the register, approximately one thousand four hundred dollars, and placed it in the bag. (Tr. 77-79). During this encounter, Haas was standing directly across the counter from the man. (Tr. 75). While Haas "didn't know what [the man] was going to do with the knife," she believed that "if somebody is going to make a movement to do something normally their face changes." (Tr. 80-81). Accordingly, Haas "was concentrating on [the man's]

2

eyes" and "facial movements."  (Tr. 80-81).  After receiving the money, the man exited the store. (Tr. 79-81).  As the man exited the store, he instructed Haas to "stay there," otherwise he would return and "get" her.  (Tr. 80).  Approximately 90 seconds later, Haas exited the store through the rear entrance and telephoned the police.  (Tr. 81).

Haas attempted to provide the police with a physical description of the robber.  (Tr. 87-90).  The police later showed Haas several photographs in an attempt to identify the robber.  (Tr. 90-91).  While Haas viewed photographs that "resembled" the robber, she did not see a photograph of the man in question.  (Tr. 91-92).

On May 27, 2004, however, Haas encountered the robber at the Otsego, Michigan Taco Bell.  (Tr. 92-93).  On the day in question, Haas entered the restaurant with her boyfriend, Timothy Milbocker, and ordered food from the counter.  (Tr. 93).  Haas immediately saw the robber "working in the food area."  (Tr. 94).  When the man brought Haas' food to the counter, Haas immediately "got like goose bumps all over," her hands "felt real clammy," she "couldn't breathe right," and she "started crying."  (Tr. 94-95).  The man "froze" and "looked at" Haas.  (Tr. 96).  The man then "took off out the back" of the restaurant.  (Tr. 96).  When Haas exited the restaurant she saw the man standing behind the restaurant smoking a cigarette.  (Tr. 96-99).  Haas then contacted the police.  (Tr. 96-99).

At trial, Haas identified Petitioner as the man that robbed Morgan's Appliance Store on December 18, 2003.  (Tr. 75).  She also identified Petitioner as the man she encountered at Taco Bell on May 27, 2004.  (Tr. 92-93).  When Haas was asked whether she had any doubt concerning her identification of Petitioner as the robber, Haas replied, "not at all."  (Tr. 100).

**Brad Woodson**

Woodson was employed as the Area Supervisor for Taco Bell restaurants in Dowagiac, Edwardsburg, Watervliet, Benton Harbor, and St. Joseph. (Trial Transcript, November 1, 2004, 128-29). As of December 18, 2003, Petitioner was employed at the Watervliet Taco Bell. (Tr. 129). Petitioner was scheduled to work that day, but "didn't show up for work." (Tr. 131-32). Woodson was not involved with Petitioner's employment at the Otsego Taco Bell, as that restaurant was part of a different franchise. (Tr. 132-33).

**Susan Tripp**

As of December 2003, Tripp was dating Petitioner. (Trial Transcript, November 1, 2004, 138-39). Tripp lived in Allegan at the time and Petitioner would often stay at her residence. (Tr. 139-40).

**William Morgan**

Morgan owns and operates Morgan Appliances, in Allegan. (Trial Transcript, November 1, 2004, 150-51). Approximately two weeks before the December 2003 robbery of his store, Morgan had contact with a man who was attempting to return some refrigerator filters. (Tr. 152-55). Despite the fact that the man did not have a receipt for the filters, Morgan provided the man with a refund. (Tr. 155-56). When asked whether Petitioner was the man who returned the refrigerator filters, Morgan stated, "[h]e's quite a bit different at the moment, but yes, his facial features are basically the same thing. His hair is different, his glasses are different." (Tr. 154).

4

**Timothy Milbocker**

On May 27, 2004, Milbocker and Ashley Haas entered a Taco Bell restaurant.  (Trial Transcript, November 1, 2004, 170-71).  After Milbocker and Haas ordered their food, a man "put the food up on the counter and kind of froze when he saw" Haas.  (Tr. 171-72).  Haas "got really frightened, shaking, [and] started crying."  (Tr. 171-73).  Haas then stated, "that's the guy who robbed Morgan's Appliances."  (Tr. 171).  When Milbocker asked Haas, "if she was sure," Haas responded, "yes."  (Tr. 171).  The man then exited the building.  (Tr. 172-73).  Milbocker and Haas exited the restaurant and saw the man standing behind the restaurant smoking a cigarette.  (Tr. 171-73, 178).  Haas then contacted the police.  (Tr. 171-73).  Milbocker identified Petitioner as the man they encountered at Taco Bell on May 27, 2004.  (Tr. 171-72).

**Mindi Smith**

As of December 18, 2003, Smith was co-owner of New Beginnings, a consignment shop located three stores away, on the same street, as Morgan's Appliance Store.  (Trial Transcript, November 1, 2004, 182-83).  At approximately 1:00 p.m. on this date, a man entered her store.  (Tr. 184).  The man was carrying a bag and appeared nervous.  (Tr. 184).  When Smith asked the man if she could help him, the man "kind of stuttered and asked if [Smith] had any belts."  (Tr. 184).  Smith told the man that "the only thing [she] had was one women's style belt."  (Tr. 184).  The man did not respond.  (Tr. 184).  When Smith asked the man if he wanted to try on the belt, the man "took it and wrapped it around himself" and then stated, "it doesn't fit."  (Tr. 184).  The man then tried to hang up the belt, but "he kept dropping the belt like he was nervous."  (Tr. 184).  The man then exited the store "real fast."  (Tr. 184).  When Smith was asked whether Petitioner was the man

that entered her store that day, she stated, "he had thicker hair at the time and different glasses," but that "physically face wise, yes, that is him." (Tr. 185).

**Mary Johnson**

On December 18, 2003, Johnson stopped by New Beginnings, Mindi Smith's consignment store. (Trial Transcript, November 1, 2004, 193-95). While she was there, a man with a bag entered the store. (Tr. 195). The man tried on a belt and then exited the store. (Tr. 195). Because she did not get a very good look at the man, Johnson was unable to definitively identify Petitioner as the man that she saw in New Beginnings. (Tr. 196). However, Johnson later saw a man walking down the street "like from Morgan's" that she identified as Petitioner. (Tr. 197-98, 205-06).

**Kevin Franck**

As of December 18, 2003, Franck was employed with the Allegan City Police Department. (Trial Transcript, November 1, 2004, 209). At approximately 1:21 p.m. that day, Franck was dispatched to investigate an armed robbery at Morgan's Appliance. (Tr. 209). Franck arrived at the location and spoke with Ashley Haas. (Tr. 209-10). This was the extent of Officer Franck's involvement in the matter. (Tr. 212).

**Ron Boysen**

As of December 18, 2003, Boysen was employed as a Sergeant with the Allegan City Police Department. (Trial Transcript, November 1, 2004, 217-18). That afternoon he was

6

dispatched to investigate an armed robbery at Morgan's Appliance. (Tr. 218). When he arrived at the scene, Officer Franck and Ashley Haas were present. (Tr. 218). Boysen investigated the crime scene, but was unable to discover any fingerprints left by the assailant. (Tr. 219).

On May 27, 2004, Ashley Haas telephoned the Allegan City Police Department to report that she "had witnessed the individual who had robbed her on December 18th." (Tr. 221-22). Sergeant Boysen spoke with Haas and instructed her to proceed to the Movie Outpost, located directly east of the Taco Bell where she was presently located. (Tr. 222). Sergeant Boysen, along with Sergeant Brian McFanin, proceeded to the Movie Outpost where they met Haas and her boyfriend. (Tr. 222).

Boysen proceeded to the Taco Bell to "make sure that there was an individual that matched [Haas'] description." (Tr. 223). After observing Petitioner in the food preparation area of the restaurant, Sergeant Boysen returned to speak with Sergeant McFanin. (Tr. 223). The pair then returned to the restaurant to speak with Petitioner. (Tr. 223-24). Boysen informed Petitioner that he was investigating a robbery that occurred in December 2003. (Tr. 224). Petitioner subsequently agreed to accompany the officers to the Allegan City Police Department where he was later arrested. (Tr. 224-27).

**Brian McFanin**

As of December 18, 2003, McFanin was employed with the Allegan City Police Department. (Trial Transcript, November 1, 2004, 246-47). Sometime after 2:00 p.m. that day Sergeant McFanin was dispatched to Morgan's Appliance Store to begin investigating the robbery that occurred earlier that day. (Tr. 247). McFanin did not recover any items of evidentiary value.

7

(Tr. 247).  McFanin accompanied Sergeant Boysen to the Otsego Taco Bell on May 27, 2004, to speak with Petitioner.  (Tr. 248).

**Jay Gibson**

As of May 28, 2004, Gibson was employed as a police officer for the City of Allegan. (Trial Transcript, November 1, 2004, 265-66).  On that day, Officer Gibson executed a search warrant at Susan Tripp's residence seeking a knife and certain items of clothing.  (Tr. 266-68).

**Dennis Gorr**

As of December 18, 2003, Gorr was employed as a Lieutenant with the Allegan City Police Department.  (Trial Transcript, November 3, 2004, 2-3).  That afternoon, Gorr was dispatched to Morgan's Appliance to investigate an armed robbery.  (Tr. 3-6).  Ashley Haas attempted to provide the police with a description of the robber.  (Tr. 5-6).  Haas and Mindi Smith were later shown photographs of potential suspects.  (Tr. 6, 10).  Petitioner's photograph was not included with those shown to Haas and Smith.  (Tr. 12).  Haas was unable to identify her assailant from the photographs she was shown.  (Tr. 6-9).  Likewise, Smith was unable to identify the man that was in her store prior to the robbery from the photographs she was shown.  (Tr. 10-11).

**Helen Cunningham**

Cunningham is Petitioner's mother.  (Trial Transcript, November 3, 2004, 23-24). As of December 18, 2003, Petitioner was living with his mother in South Haven, Michigan.  (Tr. 24).  Sometime that morning Petitioner departed, telling his mother that he was going shopping.  (Tr.

8

24-25).  Petitioner returned home between 6:30 p.m. and 7:00 p.m.  (Tr. 25).

**Amy Wilson**

Wilson testified that she was dating Petitioner's nephew.  (Trial Transcript, November 3, 2004, 33).  According to Wilson, on a day "the week before Christmas," she and her boyfriend saw Petitioner and his daughter shopping at a mall in Holland, Michigan.  (Tr. 33-35).  Wilson did not know what day of the week this occurred, but indicated that she saw Petitioner "around 2:00 or 2:30" of the afternoon in question.  (Tr. 34-35).

Following the presentation of evidence, the jury found Petitioner guilty of armed robbery.  (Trial Transcript, November 3, 2004, 93).  At sentencing, the trial judge noted that Petitioner had previously been convicted of five felonies and fifteen misdemeanors.  (Sentencing Transcript, December 3, 2004, 7).  As an habitual offender, Petitioner was sentenced to serve 252-450 months in prison.  (Tr. 9).  Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I.    The evidence was insufficient to support the identification of Mr. Greer as the robber such that Defendant's conviction of armed robbery violated due process of law, and the conviction must be vacated.
>
> II.   Defense trial counsel was constitutionally ineffective in abandoning Appellant's alibi defense in failing to timely subpoena known witnesses in order to call them at trial despite filing an alibi notice.

The Michigan Court of Appeals affirmed Petitioner's conviction.  *People v. Greer*, 2006 WL 1628944 (Mich. Ct. App., June 13, 2006).  Asserting the same two claims, Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal.  The court denied

Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Greer,* 722 N.W.2d 871 (Mich. 2006).

Petitioner later filed in the trial court a motion for relief from judgment,[1] which was denied on April 27, 2007. *People v. Greer*, No. 04-013767-FC, Order (Allegan Cnty. Cir. Ct., April 27, 2007). The trial judge denied Petitioner's motion on the ground that "[t]he issues raised [therein] were decided against him in a prior appeal." *Id.* Petitioner then moved in the Michigan Court of Appeals for leave to appeal this determination, asserting the following claims:

I.  Defendant's appellate counsel was ineffective causing Mr. Greer's appeal of right to be prejudiced. Appellate counsel's failure to raise issues of constitutional magnitude and issues of merit demonstrates cause for this current appeal. The trial judge abused his discretion by denying Mr. Greer's motion for relief from judgment. The Fourteenth Amendment guarantees a criminal defendant effective assistance of counsel in his first appeal. Defendant Greer did not receive effective appellate counsel in violation of his Fourteenth and Sixth United States constitutional amendments.

II. Defendant now comes to this court with newly discovered evidence of an exculpatory nature. Defendant states his innocence and there has been a miscarriage of justice. Also ineffective counsel for not properly investigating and producing evidence. The reviewing trial judge for the motion for relief from judgment was also incorrect by stating this issue as re-raised, violating Defendant's right to a fair hearing.

III. Defendant's due process rights to a corporeal line-up has been violated. A line-up was set but never actually conducted. There was police misconduct as well as prosecutor misconduct and ineffective trial

---

[1]  The record does not reflect the precise issues advanced in this motion.

counsel.  Violations of Defendant's V, VI, and XIV
Amendments.  Also, the trial court was in error when
they stated this issue was re-raised.

IV.     Defendant's verdict is a product of a verdict against
the great weight of evidence.  Also, appellate counsel
was ineffective for raising an incorrect issue of
insufficient amount of evidence.  Also, not motioning
the court for a new trial under the great weight claim
violating Defendant's U.S. constitutional amendment
XIV right.

Petitioner's request was denied "because Defendant has failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)."  *People v. Greer*, No. 281980, Order (Mich.

Ct. App., Jan. 25, 2008).  Asserting the same three claims, Petitioner moved in the Michigan

Supreme Court for leave to appeal this decision.  Petitioner's request was denied on the ground that

Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

*People v. Greer*, No. 136072, Order (Mich., Sept. 9, 2008).  On January 14, 2009, Petitioner initiated

the present action in which he asserts the following claims:

I.      The evidence was insufficient to support the
identification of Petitioner as the robber such that
Petitioner's conviction for armed robbery violated
due process of law, and the conviction must be
vacated.

II.     Trial counsel was constitutionally ineffective in
abandoning Petitioner's alibi defense, in failing to
timely subpoena known witnesses in order to call
them at trial, despite filing an alibi notice.  Thus, also
depriving Petitioner of a complete defense.

III.    Petitioner's appellate counsel was ineffective causing
Mr. Greer's appeal of right to be prejudiced.
Appellate counsel's failure to raise issues of
constitutional magnitude and issues of merit
demonstrates cause for this current appeal.  The trial
judge abused his discretion by denying Mr. Greer's

11

motion for relief from judgment, through the Fourteenth Amendment's guarantees of a criminal defendant effective assistance of counsel in his first appeal.

A.   Trial counsel was ineffective for not properly investigating and producing evidence and now Petitioner comes to this court with newly discovered evidence of exculpatory nature, in which Petitioner states he is innocent and there has been a miscarriage of justice.

B.   Petitioner's due process rights to a corporeal line-up has been violated. A line-up was set but never actually conducted.   There was police misconduct and ineffective trial counsel.

C.   Petitioner's verdict is a product of a verdict against the great weight of the evidence. Also, appellate counsel was ineffective for raising an incorrect issue of insufficient amount of evidence and not motioning the court for a new trial under the great weight claim.

## STANDARD OF REVIEW

Greer's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless

12

the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999).  The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

13

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly

14

established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2).  This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits."  *Id.* at 784-85.  Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely."  *Id.*  If this presumption is overcome, however, the Court reviews the matter de novo.  *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

**ANALYSIS**

**I.**        **Sufficiency of the Evidence**

Petitioner asserts that he is entitled to relief because the prosecution failed to present sufficient evidence to support his conviction for armed robbery.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Pursuant to Michigan law in effect as of December 18, 2003, an individual was guilty of armed robbery if the following elements were satisfied: (1) an assault; (2) a felonious taking of property from the victim's presence or person; (3) while the defendant is armed with a weapon. *See People v. Rodgers*, 645 N.W.2d 294, 298 (Mich. Ct. App. 2001).  It does not matter whether the victim "actually owned the property taken," as the prosecution need only establish that the property

16

was taken from the victim's presence and that "the victim's right to possess the property was superior to the defendant's right to possess it."  *Id.*  An assault is defined as "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery."  *People v. Walker*, 2003 WL 22928770 at *6 (Mich. Ct. App., Dec. 11, 2003).

Ashley Haas testified that she was absolutely certain that Petitioner was the man that robbed Morgan's Appliance on the day in question.  She testified that Petitioner pointed a knife at her and instructed her to "put the money in the bag."  Petitioner then told Haas that if she did not "stay there," he would return and "get" her.  Mindi Smith testified that Petitioner entered her store shortly before the robbery in question.  She testified that Petitioner was carrying a bag and acted like he was nervous.  Mary Johnson testified that following robbery she saw Petitioner walking near Morgan's Appliance.

Interpreted in a light most favorable to the prosecution, this evidence is sufficient for a rational juror to conclude beyond a reasonable doubt that Petitioner committed armed robbery. The Michigan Court of Appeals rejected this particular claim, concluding that:

> Defendant argues that there was insufficient evidence to support that he was the robber.  We disagree.  "A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict."  Here, there was uncontested, eyewitness testimony from the victim asserting her complete and total confidence that defendant committed this crime.  Three additional witnesses testified to seeing someone strongly resembling the defendant in the area shortly before the crime was committed.  The culprit specifically asked for the owner by name on the day of the robbery, and both the storeowner and the victim recalled defendant visiting the store a couple of weeks before the robbery.  Viewed in a light most favorable to the prosecution and deferring to the jury's credibility determination, the evidence was sufficient to support defendant's conviction.

*Greer*, 2006 WL 1628944 at *1 (internal citations omitted).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  It is likewise not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.


## II.       Ineffective Assistance of Counsel - Alibi Defense

Prior to trial, Petitioner's counsel negotiated a plea agreement pursuant to which Petitioner would plead guilty to larceny of an amount between $200 and $1,000, a misdemeanor punishable by no more than one year in jail and a fine of up to $3,000.  (Hearing Transcript, October 29, 2004, 3).  At the plea hearing, however, which occurred on a Friday, Petitioner declined the offer.  (Tr. 3).  Petitioner's trial began three days later, on Monday, November 1, 2004.  On November 3, 2004, Petitioner presented evidence from Helen Cunningham and Amy Wilson.  After questioning these two witnesses, Petitioner's counsel indicated to the court that he also wished to present testimony from Petitioner's sister, Deborah Madden, and daughter, Valina Greer, but that neither individual could be located.  (Trial Transcript, November 3, 2004, 38-39).

Counsel completed subpoenas for these two witnesses on November 1, 2004, and provided them to law enforcement for service.  (Tr. 38-40).  After receiving the subpoenas, Lieutenant Gorr called the telephone numbers provided on the subpoenas and informed the individuals with whom he spoke that Madden and Greer would be required to testify.  (Tr. 40-41).  Gorr then faxed the subpoenas to the appropriate local police departments for service.  (Tr. 40-41).  Chief Richard Hoyer of the Allegan City Police Department testified that his office again attempted

that morning (November 3, 2004), without success, to locate the individuals in question. (Tr. 42-43).

Petitioner's counsel stated that he did not issue subpoenas for Madden and Greer until November 1, 2004, because he believed that Petitioner would accept the aforementioned plea bargain. (Tr. 45-46). Counsel also indicated that he did not expect to encounter difficulty securing the appearance of Madden and Greer because (1) he and Petitioner had both been in contact with them about this matter, and (2) they were family members. (Tr. 43-46). Counsel did not offer any indication of the testimony that Petitioner's sister might offer, but indicated that Petitioner's daughter would testify consistent with Amy Wilson that she went shopping with Petitioner on an unspecified day "a week before Christmas." (Tr. 46). The trial judge adjourned Petitioner's trial for four hours to allow counsel another opportunity to contact Madden and Greer. (Tr. 46). Counsel was unable to locate these individuals, however, and the defense rested when the trial resumed that afternoon. (Tr. 47). Petitioner asserts that by failing to timely subpoena the witnesses in question, his trial attorney rendered ineffective assistance.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel

made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

20

*Id.* (internal citations omitted).

In support of his claim, Petitioner has presented affidavits executed by Madden and Greer. (Dkt. #3, Exhibits A-B). These affidavits were executed more than two years after the completion of Petitioner's trial. Madden asserts that on December 18, 2008, Petitioner was at her residence from approximately 12:15 p.m. until 1:15 p.m., when he departed to take his daughter shopping. (Dkt. #3, Exhibit A). Greer asserts that at approximately 1:25 p.m. on December 18, 2003, Petitioner took her shopping. (Dkt. #3, Exhibit B).

In evaluating this particular claim and the affidavits submitted in support thereof, it must be remembered that Petitioner is *not* asserting that his attorney failed to properly investigate whether he had a viable alibi defense. In other words, Petitioner is not asserting that counsel was unaware of these two particular witnesses or that counsel was unaware of the potential for presenting an alibi defense. As noted above, counsel pursued an alibi defense and presented testimony from two witnesses in support thereof.

Instead, Petitioner is alleging that counsel was aware that Madden and Greer would have supported his alibi defense, but failed to timely issue the subpoenas necessary to secure their appearance. As to this particular issue, Madden asserts that she would have appeared to testify if she had been subpoenaed. (Dkt. #3, Exhibit A). Greer asserts that she "was not contacted by" Petitioner's attorney. (Dkt. #3, Exhibit B). Even assuming these assertions are accurate, such do not call into question the testimony of Lieutenant Gorr and Chief Hoyer or the statements by Petitioner's counsel concerning the various attempts that were undertaken to secure the appearance of Madden and Greer at trial. While it may have been more prudent for counsel to have issued the subpoenas at an earlier date, there is nothing in the record to suggest that such would have lead to

21

a different result (i.e., the appearance at trial of Madden or Greer).

> The Michigan Court of Appeals rejected Petitioner's claim on the ground that Petitioner had failed to demonstrate that he was prejudiced by counsel's alleged deficient performance. *See Greer*, 2006 WL 1628944 at *1. Specifically, the court stated:

> > Defendant asserts that his trial counsel was ineffective by failing to timely subpoena the witnesses and call them to testify. On the record before us, however, defendant fails to demonstrate how the delay prejudiced him. Defense counsel, in good faith, believed that defendant would offer a plea the Friday before trial. When defendant refused to plead as anticipated, defense counsel issued subpoenas the following Monday to secure the witnesses for trial and did not expect any difficulty because the witnesses were defendant's sister and daughter. Defense counsel reasonably believed that defendant's relatives would voluntarily testify. Their failure to come forward with two days' notice and intensive police efforts to secure their cooperation indicates that service of process at an earlier date would likely have had little practical effect. Additionally, the failure to call witnesses or present other alibi evidence only constitutes ineffective assistance if defendant can demonstrate that counsel's errors deprived him of a substantial alibi defense notwithstanding defendant's legitimate efforts to further its presentation. The defense is substantial if it had a reasonable likelihood of changing the trial's outcome. In this case, defendant's mother indicated that defendant visited his sister and took his daughter shopping about a week before Christmas. Another woman confirmed that she saw defendant at the mall with his daughter around that time. The record indicates that neither alibi witness could pinpoint the exact date of the shopping trip, and defense counsel conceded that he did not expect the missing witnesses' testimony to be more accurate. Therefore, defendant has not offered any evidence that the two additional witnesses would have provided him with a stronger alibi than the jury had already heard, and his claims of prejudice are speculative.[2]

*Id.* (internal citations omitted).

> This conclusion is neither contrary to, nor involves an unreasonable application of,

---

[2] The Court notes that the affidavits executed by Deborah Madden and Valina Greer were not executed until well *after* the Michigan Court of Appeals rendered its decision.

22

clearly established federal law.  Moreover, it is not based on an unreasonable determination of the facts in light of the evidence presented.  Thus, this claim raises no issue upon which habeas relief may be granted.

III.        **Procedural Default**

The remaining claims asserted in Greer's petition were first presented in Petitioner's post-conviction motion for relief from judgment.  Respondent asserts that while these claims are properly exhausted they have been procedurally defaulted, precluding review by this Court.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply; (2) the last state court rendering a judgment in the matter must have actually enforced the state procedural rule; (3)

23

application of the procedural rule in question must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner cannot demonstrate cause and prejudice excusing the default.  *See Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010).

The trial court denied Petitioner's motion for relief from judgment in a brief Order. Petitioner then moved in the Michigan Court of Appeals for leave to appeal the trial court's decision. The Michigan Court of Appeals denied Petitioner's request for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal this decision.  The Michigan Supreme Court declined Petitioner's request on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  Given the decisions by the Michigan Court of Appeals and the Michigan Supreme Court, Respondent asserts that Petitioner has procedurally defaulted the claims in question.

Controlling authority in the Sixth Circuit used to hold that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constituted a sufficient determination that the court's conclusion was based on procedural default thereby precluding federal habeas review. *See, e.g., Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).  As the Sixth Circuit recently concluded, however, such form orders are no longer sufficient to establish that a petitioner has procedurally defaulted the claim in question. *See Guilmette v. Howes*, 624 F.3d 286, 288-92 (6th Cir. 2010).  Instead, the Court must look to the "last reasoned state court opinion" to determine whether a particular claim has been denied on the merits or for failure to comply with a state procedural requirement.  *Id.* at 291.

24

The trial court denied Petitioner's motion for relief from judgment, stating that "[t]he issues raised in defendant's motion were decided against him in a prior appeal." However, it is not clear from the record (or the trial court's Order) precisely what issues Petitioner presented in his motion. Moreover, the statement that "[t]he issues raised in defendant's motion were decided against him in a prior appeal," does not seem to apply to the remaining claims asserted in the present matter, as such were not raised by Petitioner on direct appeal.[3] Thus, with respect to the remaining claims in Greer's petition, there is no enforcement by a state court of a state procedural rule to which this Court can defer. In other words, Petitioner has not procedurally defaulted the claims in question. The question, therefore, becomes whether the claims in question are reviewed pursuant to the deferential standard mandated by AEDPA or are instead subject to de novo review.

As discussed above, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Harrington*, 131 S.Ct. at 784-85. This presumption is overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* The state court decisions resolving the claims in question are insufficiently clear to conclude that this presumption has been overcome. Thus, review of Petitioner's remaining claims must be undertaken pursuant to the deferential standard of review articulated above.[4]

---

[3] The statement in question would seem to apply only to claims I and II discussed above. Had the trial court been referring to Petitioner's remaining claims in this matter, one would have expected the trial court to conclude that such claims "could have been raised" in Petitioner's prior appeal, but were not. *See* Michigan Court Rule 6.508(D)(3). There is no indication, however, either directly or indirectly, that the trial court relied on or invoked Rule 6.508(D)(3) in denying Petitioner's motion for relief from judgment.

[4] As discussed below, however, even if the claims in question are reviewed pursuant to the more generous *de novo* standard, the result is the same as these claims are clearly lacking in merit.

25

**IV.**          **Ineffective Assistance - Corporeal Lineup**

Ashley Haas testified that when Petitioner robbed her he had dark hair on his head and "scruffy looking" facial hair.  (Trial Transcript, November 1, 2004, 86).  Haas also testified that Petitioner was wearing a particular style of eyeglasses.  (Tr. 88).  Haas testified that Petitioner "looked similar" when he was arrested on May 27, 2004.  (Tr. 98).  William Morgan testified that the man he encountered trying to return refrigerator filters without a receipt approximately two weeks before the robbery in question had long hair and an unkempt beard.  (Tr. 152).  Mindi Smith testified that when Petitioner entered her store on the day of the robbery he had thick hair and was wearing glasses.  (Tr. 184-85).

On September 22, 2004, Lieutenant Gorr transported Petitioner from the Allegan County Jail to the Kalamazoo County Jail "for the purpose of trying to find people that looked like [Petitioner] for a line up."  (Hearing Transcript, October 15, 2004, 3).  However, when Gorr encountered Petitioner he realized that Petitioner had attempted to alter his physical appearance by shaving his head and removing his facial hair.  (Tr. 3-4).  Petitioner was also wearing a pair of glasses that "were not his own personal glasses."  (Tr. 5).  Accordingly, Lieutenant Gorr "decided not to have a line up."  (Tr. 5).

Petitioner now asserts that his trial counsel was ineffective for "failing to object to the entire practice of the identification issues."  Petitioner asserts that "at the very least counsel could have requested an expert witness on identification."  Petitioner also seems to suggest that counsel should have requested that the trial court intervene and mandate that a corporeal lineup be conducted.

Even if the Court assumes that counsel should have sought to question an expert

witness, Petitioner offers no evidence that any such expert would have provided testimony favorable to his cause. Thus, Petitioner cannot establish that he was prejudiced by counsel's alleged shortcoming. Likewise, even if the Court assumes that counsel should have motioned the court to require that a corporeal lineup be conducted, Petitioner has failed to establish that he was prejudiced by the failure to do so. First, Petitioner enjoys no constitutional right to participate in a corporeal lineup, *see Blanks v. Romanowski*, 2010 WL 4923033 at *11 (E.D. Mich., May 18, 2010) (citations omitted); *McMillian v. Berghuis*, 2009 WL 3877510 at *25 (W.D. Mich,. Nov. 18, 2009) (citation omitted), and has identified nothing in the record to suggest that the trial court would have granted any such motion. Furthermore, there is nothing in the record to suggest that Petitioner would not have been identified as the perpetrator of the robbery in question had a corporeal lineup been conducted.

This claim is without merit. Moreover, the rejection of this claim by the Michigan courts is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Likewise, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## V.        Ineffective Assistance - Motion for New Trial

Petitioner next asserts that his attorneys were ineffective for failing to move in the trial court for a new trial on the ground that the verdict in this matter was against the great weight of the evidence. As discussed above, the evidence in this matter supports Petitioner's guilt. There is nothing in the record to suggest that the trial court would have granted a motion for new trial had such a motion been asserted. Petitioner's right to the effective assistance of counsel is not violated

where counsel declined to raise a frivolous issue.

This claim is without merit.  Moreover, the rejection of this claim by the Michigan courts is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Likewise, it is not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**VI.**         **Ineffective Assistance - Issues Raised on Appeal**

Petitioner asserts that his appellate counsel was ineffective for failing to assert on direct appeal claims relating to "new evidence" and "identification."

First, Petitioner alleges that his appellate counsel should have moved in the trial court for a new trial based on the affidavits submitted by his sister and daughter.  Petitioner asserts that these affidavits constitute "newly discovered evidence" and that such demonstrate that the great weight of the evidence contradicts the jury's verdict.

Michigan law provides that a new trial may be granted on the basis of newly discovered material evidence only if the defendant can establish: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial.  *See, e.g., People v. Fields*, 2004 WL 2176893 at *3-4 (Mich. Ct. App., Sept. 28, 2004).  Petitioner's claim fails for several reasons.  The evidence was not newly discovered as Petitioner's trial counsel was aware of such prior to trial.  The two witnesses in question, however, chose not to make themselves available to testify at Petitioner's trial.  Petitioner has failed to demonstrate that he was unable to present the

28

evidence in question through the exercise of reasonable diligence. Finally, the evidence in question does not make it "probable" that a different outcome would have resulted. Accordingly, Petitioner cannot establish that he was prejudiced by counsel's failure to assert on appeal this particular issue.

Petitioner also faults his appellate counsel for failing to assert on appeal the claim that the identification of Petitioner as the man who robbed Morgan's Appliance on December 18, 2003, was somehow "unreliable." The Court is not persuaded. Ashley Haas testified that during the robbery she concentrated on Petitioner's eyes and face. She testified that she had no doubt that Petitioner was the man that threatened her with a knife and committed robbery on the day in question. There is nothing in the record calling into question Haas' testimony on this matter or her identification of Petitioner as her assailant. William Morgan, Mindi Smith, and Mary Johnson also identified Petitioner after having the opportunity to view him up close. The record contains nothing calling into question their testimony on the matter. Finally, there is no evidence that Petitioner was subjected to any type of suggestive or improper identification procedure by the police or prosecutor.

These claims are without merit and their rejection by the Michigan courts is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Such is likewise not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, these claims raise no issue upon which habeas relief may be granted.

VII.        **Prosecutorial and Police Misconduct**

As previously noted, the police planned on conducting a physical lineup in which Petitioner would participate. However, when the police realized that Petitioner had drastically altered his appearance from the date of the robbery and the date of his arrest, the police decided

29

against conducting a physical lineup.  Petitioner asserts that this conduct constituted misconduct and violated his right to due process.

As noted above, Petitioner enjoys no constitutional right to participate in a physical lineup.  Petitioner has failed to identify (and the Court is not aware of) any authority indicating that it constitutes misconduct for the police or prosecutor to decline to conduct a physical lineup (something to which a criminal defendant is not even entitled) for or with a defendant who has altered (or attempted to alter) his appearance relative to the date or time in question.  While Petitioner clearly has a constitutional right to not be subjected to unfair or impermissibly suggestive identification procedures, *see, e.g., Mills v. Cason*, 572 F.3d 246 (6th Cir. 2009), the Court is aware of no authority that permits a criminal defendant to avoid identification and prosecution by actively manipulating a legitimate identification procedure.

This claim is without merit.  Moreover, the rejection of this claim by the Michigan courts is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Likewise, it is not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

## VIII.        Actual Innocence

Petitioner also asserts throughout his pleadings in this Court that he is actually innocent of the crime of which he was convicted.  To the extent Petitioner is asserting that such entitles him to habeas relief, such claim is without merit.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Court observed that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for

federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400, *see also*, *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding.'") (citations omitted).  As the *Herrera* Court stated, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."  *Herrera*, 506 U.S. at 400.

As discussed herein, Petitioner has failed to identify any error of federal or constitutional law that occurred during his trial or that has resulted from his conviction and imprisonment.  Accordingly, this particular claim is not cognizable and affords Petitioner no relief.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Greer's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 29, 2011                    /s/ Ellen S. Carmody                  
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge